Jeremy D. LAWTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000206–DG.

Supreme Court of Kentucky.

Oct. 27, 2011.

Jamesa J. Drake, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, James Hays Lawson, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Jeremy D. Lawton, was convicted of escape in the second degree and of being a persistent felony offender in the second degree (PFO II). He was sentenced to six years' imprisonment. The Court of Appeals affirmed his convictions, and he appeals from that decision. The issues on appeal are (1) whether Appellant was entitled to a directed verdict on the charge of second-degree escape, (2) whether the instruction for second-degree escape was flawed and constitutes palpable error, and (3) whether the evidence presented supported an instruction for third-degree escape. The Court of Appeals is affirmed on the issues of the motion for directed verdict and the instruction for third-degree escape, but the instruction for second-degree escape constitutes palpable error. This case is therefore reversed and remanded for a new trial.

## I. Background

In November 2006, Appellant began serving a twelve-month sentence in the

Fayette County Detention Center (FCDC) for criminal possession of a forged instrument in the third degree, a misdemeanor. In July 2007, the trial court modified its order of incarceration, releasing Appellant from the FCDC and ordering him to participate in the Home Incarceration Program (HIP) so that he could care for his mother, who was in poor health.

As a condition of his home incarceration, the trial court required Appellant to wear an ankle bracelet and prohibited him from leaving his mother's home without permission of his caseworker. Appellant was not given work release, but was allowed to take his mother to doctor's appointments. Otherwise, he was to remain in her home at all times. The ankle bracelet contained an electronic transmitter, which, when broken, sends a signal to the home monitoring unit, which then "communicates" with the Community Corrections Monitoring Center.

On the evening of August 21, 2007, Appellant's caseworker received an alert that the transmitter band on Appellant's ankle bracelet was open. The next day, the caseworker went to Appellant's mother's home and retrieved the bracelet, but was unable to locate Appellant. Appellant remained at large for several weeks until the police successfully executed a warrant for his arrest on October 2, 2007. During those weeks, Appellant claimed he worked at a screen printing shop and taught dance lessons to earn money, which he used to pay his mother's medical bills and to pay child support.

Following a trial by jury, Appellant was sentenced to three years' imprisonment, enhanced to six when he was found guilty of PFO II. Appellant appealed to the Court of Appeals, which considered this a case of first impression. The Court of Appeals affirmed the ruling of the trial court, finding that Appellant had escaped from a detention facility under KRS 520.030.

There is no dispute about the underlying facts. Appellant agrees that he "escaped" from home incarceration, but he argues that he should have been charged with third-degree escape rather than second-degree escape.

## II. Analysis

### A. Relevant Statutes

This case is about statutory interpretation, thus a brief summary of the relevant statutes is pertinent.

Second-degree escape is defined as follows: "A person is guilty of escape in the second degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody." KRS 520.030(1). By its plain language, second-degree escape may be charged when a defendant is in a *detention facility* and escapes the facility, or when charged with or convicted of a *felony* he escapes any other kind of *custody*. Third-degree escape is defined as follows: "A person is guilty of escape in the third degree when he escapes from custody." KRS 520.040(1). The plain language of this statute encompasses *any* escape if he is being held in any kind of custody. Based on the facts, the prosecutor has a certain amount of discretion in how he or she charges the escape.

"Escape" is defined as "departure from custody or the detention facility in which a person is held or detained when the departure is unpermitted, or failure to return to custody or detention following a temporary leave granted for a specific purpose or for a limited period." KRS 520.010(5). Thus, a person may "escape" either by leaving custody or a detention facility without permission, or by failing to return to custody

or a detention facility after a temporary leave.

"Detention facility" is defined in relevant part as "any building and its premises used for the confinement of a person ... [c]harged with or convicted of an offense." KRS 520.010(4).

As Appellant points out, several different theories have been advanced by the Commonwealth, the trial court, and the Court of Appeals about how the second-degree escape statute applies to this case. The first theory, set out in the indictment, the jury instructions, and the Court of Appeals' opinion, is that Appellant committed second-degree escape by escaping from the custody of the Fayette County Detention Center (FCDC). The second theory, set out by the Commonwealth in its brief, is that Appellant committed second-degree escape by escaping from his mother's home, which was a detention facility under the terms of Appellant's HIP agreement. The third theory, also set out in the Commonwealth's brief, is that Appellant committed second-degree escape by escaping from the FCDC's custody while being a convicted felon, based on Appellant's felony conviction for possession of a controlled substance in November 2003. These various theories will be addressed throughout the following discussion.

## B. Trial Court Properly Denied Motion for a Directed Verdict of Acquittal

■ Appellant moved for a directed verdict of acquittal on the charge of second-degree escape at the conclusion of the Commonwealth's case and again at the close of the evidence. On appellate review, this Court reviews the trial court's rulings on motions for a directed verdict as follows: "If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not

entitled to a directed verdict of acquittal." *Commonwealth v. Sawhill,* 660 S.W.2d 3, 5 (Ky.1983) (quoting *Trowel v. Commonwealth,* 550 S.W.2d 530, 533 (Ky.1977)).

■ The trial court properly denied Appellant's motion for a directed verdict of acquittal because it would not be clearly unreasonable for a jury to find Appellant guilty under the Commonwealth's evidence and its theory that Appellant escaped from his mother's home, which was a detention facility under his HIP agreement.

Under the plain meaning of KRS 520.010(4), Appellant's mother's home constitutes a detention facility. "Detention facility" is defined in relevant part as "any building and its premises used for the confinement of a person ... [c]harged with or convicted of an offense." KRS 520.010(4). The statute describing the conditions of home incarceration, KRS 532.220(1), states, "The home incarceree shall be *confined* to his home at all times except when [participating in a permitted activity]." KRS 532.220(1) (emphasis added). Further, the definition of "home incarceration" makes it clear that the home is used as the place of confinement:

> "Home incarceration" means the use of a monitoring device approved by the commissioner of the Department of Corrections to facilitate a prisoner's ability to maintain gainful employment or to participate in programs approved as a condition of his or her incarceration, or both, *using the person's home for purposes of confinement.*

KRS 532.200(2) (emphasis added). Thus, in the home incarceration program, the home is the building "used for the confinement of a person," and so it meets the definition of detention facility in KRS 520.010(4).

Appellant argues that this Court should look to the definition of "home" in the

home incarceration statute to determine whether it may be a detention facility. "Home" is defined as

the temporary or permanent residence of a defendant consisting of the actual living area. If more than one (1) residence or family is located on a single piece of property, "home" does not include the residence of any other person who is not part of the social unit formed by the defendant's immediate family. A hospital, nursing care facility, hospice, half-way house, group home, residential treatment facility, or boarding house may serve as a "home" under this section. . . .

KRS 532.200(1). Appellant argues that because the definition of "home" does not say that a home may be considered to be a detention facility, the legislature must not have intended a home to ever be one. This reading of the statutory definition is not correct. . The definition explains the types of places where an incarceree may be confined under HIP, but it does not say or imply that it limits the definition of detention facility in KRS 520.010(4). Indeed, the only statute that defines—or purports to define—a "detention facility" is KRS 520.010(4). And as discussed above, a plain reading of KRS 520.010(4) leads to the conclusion that a home used for home incarceration fits under the definition of detention facility. In the context of home incarceration, a home is a building *used for confinement*. It is therefore a detention facility under the statute. The two definitions are not mutually exclusive.

■ We hold that, for an incarceree in HIP, leaving the specified home without permission, or failing to return to the home after a temporary, authorized leave, is escape from a detention facility under KRS 520.030(1). Escape from such a home can therefore constitute second-degree escape. This reading of the statute is

consistent with the HIP statutes, which specifically note that violation of HIP conditions can result in a second-degree escape charge. The HIP conditions statute states in part: "Violation of subsection (1) of this section may subject the home incarceree to prosecution under KRS 520.030 ( [second-degree] escape)." KRS 532.220(2). Subsection (1) states that the incarceree must be confined to the home except when participating in permitted activities. KRS 532.220(1). Therefore, leaving the home without permission, or failing to return after a temporary leave, may subject the incarceree to prosecution under the second-degree escape statute.

Appellant focuses on the word "may" in KRS 532.220(2) to argue that the availability of prosecution under the second-degree escape statute depends on whether the incarceree was serving a sentence for a felony or a misdemeanor. But the word "may" in this subsection is merely an acknowledgment of prosecutorial discretion—the Commonwealth does not *have* to prosecute an incarceree who escapes from home incarceration, but if it does, second-degree escape is the appropriate statute. And the clear effect of the sentence is to put a HIP participant on additional notice that he can be subject to a second-degree escape charge.

This reading of the statute is also consistent with the Court's two previous cases dealing with escape from home incarceration, *Stroud v. Commonwealth*, 922 S.W.2d 382 (Ky.1996), and *Weaver v. Commonwealth*, 156 S.W.3d 270 (Ky.2005), despite Appellant's argument to the contrary. Appellant notes that *Stroud* and *Weaver* focused on the part of the second-degree escape statute that criminalizes escape from custody while charged with or convicted of a felony. The main holdings of *Stroud* and *Weaver* were that participation in HIP constituted being "in custody" for

the purposes of the escape statute. In *Stroud*, the defendant disconnected his monitoring device while on home incarceration for first-degree robbery, a felony. 922 S.W.2d at 383. He was convicted of second-degree escape under an escape-from-custody theory. *Id.* Thus, the Court was presented only with the question whether participation in HIP constituted being "in custody" under the second-degree escape statute, and it found that it did. *Id.* at 384. Similarly, in *Weaver*, the defendant was charged with a felony and released on his own recognizance with the requirement that he participate in HIP while awaiting trial. 156 S.W.3d at 270. He failed to show up to work and then disappeared for several weeks. *Id.* The Court held that he, too, could be charged with second-degree escape. *Id.* at 271–72.

Since the defendants in both *Stroud* and *Weaver* escaped while they were charged with or convicted of felonies, and they were "in custody" because they were on home incarceration, they could be convicted of second-degree escape.

Appellant therefore urges that the same analysis apply in this case. He acknowledges that he escaped while in custody. But because he was not charged with or convicted of a felony at the time he escaped, he says that he cannot be convicted of second-degree escape under the approach in *Stroud* and *Weaver*. He argues that he should only be convicted of third-degree escape because all he did was escape from custody.

But the fact that the defendants in *Stroud* and *Weaver* were prosecuted under one part of the second-degree escape statute does not mean that other home incarcerees cannot be prosecuted under the other part of the statute. Neither *Stroud* nor *Weaver* needed to address the question whether a home used in HIP meets the definition of "detention facility." Thus,

neither *Stroud* nor *Weaver* is inconsistent with this Court's reading of the escape statutes to mean that a home used for home incarceration is a detention facility for that purpose.

At trial, the Commonwealth proved that Appellant left his mother's house without permission. Since his mother's house was a detention facility as defined in KRS 520.010(4), the Commonwealth proved that he escaped from a detention facility. It would not have been unreasonable for a jury to find that he committed second-degree escape, and so the trial court did not err in denying Appellant's motions for a directed verdict of acquittal.

## C. Jury Instruction Was Palpable Error

Alternatively, Appellant argues that the jury instruction was erroneous because it did not include all the elements of second-degree escape and instead only required findings that would support a conviction for third-degree escape. Appellant admits that this error was not preserved, but asks for palpable error review under RCr 10.26.

For the reasons explained below, the jury instruction in this case was palpable error and requires reversal. Although evidence was presented at trial that would have supported a conviction for second-degree escape, the jury instruction did not state the elements necessary for such a conviction.

### 1. The Jury Instruction Did Not Include All the Necessary Elements for Second–Degree Escape

As discussed above, a person may commit second-degree escape by either (1) escaping from a detention facility, or (2) escaping from custody while charged with or convicted of a felony. KRS 520.030(1). The jury instruction in this case did not list all the elements required under either

part of the statute. Each part of the statute will be considered in turn.

### a. Escape from Custody While Charged with or Convicted of a Felony

■ The indictment of Appellant read in part: "On or about August 21, 2007 in Fayette County, Kentucky, the above named Defendant committed the felony offense of Escape, Second Degree by escaping from the custody of the Fayette County Detention Center." The trial court's instruction to the jury used similar language but added a second element:

> You will find the Defendant guilty of Escape, Second Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about August 21, 2007 and before the finding of the Indictment herein, he escaped from the custody of the Fayette County Detention Center;
>
> AND
>
> B. That at the time of the escape the Defendant was serving a twelve (12) month sentence.

This instruction appears to be modeled after Cooper and Cetrulo's sample instruction for second-degree escape under the theory of escape from custody while charged with or convicted of a felony.[1] 1 William S. Cooper 85 Donald P. Cetrulo,

*Kentucky Instructions to Juries, Criminal* § 7.27 (5th ed.2006). But this form of the instruction does not apply because it is obvious that Appellant's twelve-month sentence was for a misdemeanor, not a felony. The instruction therefore did not require the jury to find all the factual elements necessary for second-degree escape under the custody element of the statute, which was erroneous. *See Sanders v. Commonwealth,* 301 S.W.3d 497, 499 (Ky.2010) ("[I]t is error to convict a defendant of a crime when the jury has not been properly instructed on the elements of the crime.").

This Court has twice held that a defendant in HIP is "in custody" for the purposes of KRS 520.030. *Stroud,* 922 S.W.2d at 384 ("Participation in the Home Incarceration Program does constitute custody sufficient to support a charge of escape in the second degree."); *Weaver,* 156 S.W.3d at 272 (reiterating holding in *Stroud* that a violation of HIP could constitute second-degree escape). In both *Weaver* and *Stroud,* however, the defendants were charged with or convicted of felonies. Here, Appellant was serving a sentence for a misdemeanor. Even though he was in the *custody* of the FCDC, he could not be convicted of second-degree escape under this part of the statute unless the jury found that he had been charged with or convicted of a felony, which the instruction

---

1. The sample instruction reads:

 [You] will find the Defendant guilty of Second–Degree Escape under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

 A. That in this county on or about _____ (date) and before the finding of the Indictment herein, he escaped from the custody of _____ (victim);

 B. That _____ (victim) was then _____ (ID victim's title);

 AND

 C. That at the time of his escape, the Defendant had been [charged with] [convicted of] the crime of _____ (ID felony offense).

 1 William S. Cooper & Donald P. Cetrulo, Kentucky Instructions to Juries, Criminal § 7.27 (5th ed.2006) (emphasis added). Element (C) in the sample instruction is the part of the instruction that was missing from the given instruction or, at least, was given incorrectly, since it mentioned a non-felony offense. The felony offense must be identified. A sample instruction for escape from a detention facility is included later in the opinion, in response to the Commonwealth's request.

did not require the jury to do (and the evidence could not support).

The Commonwealth argues that because Appellant had previously been convicted of a felony and was therefore a "convicted felon" in the colloquial sense, he could be convicted of second-degree escape under the theory of escape from custody while convicted of a felony. This reading of the statute is incorrect.

Appellant was convicted of possession of a controlled substance, a felony, in November 2003. But at the time of his escape in August 2007, he was not serving a sentence for the 2003 felony conviction. Instead, he was serving a twelve-month sentence for an unrelated misdemeanor. Despite the fact that the crime for which Appellant was serving a sentence in 2007 was a misdemeanor rather than a felony, the Commonwealth argues that Appellant's status as a convicted felon should support a conviction for second-degree escape under the part of the statute that reads: "A person is guilty of escape in the second degree when ... being charged with or *convicted* of a felony, he escapes from custody." KRS 520.030(1) (emphasis added).

The Commonwealth's position is essentially that KRS 520.030 should function similarly to the PFO statute, KRS 532.080, or other enhancement statutes, in that the statute should apply to previously convicted felons differently than other defendants. Under the Commonwealth's approach to the second-degree escape statute, a convicted felon who later escapes from custody can be convicted of second-degree escape, regardless of the reason he was in custody when he escaped. Any other person who escapes from custody can only be convicted of second-degree escape if the Commonwealth proves that he escaped from custody while charged with a felony or while serving a sentence for a felony.

But nothing in the second-degree escape statute supports the Commonwealth's argument that it should function like the PFO statute. The PFO statute includes a lengthy explanation of what types of crimes it applies to, the length of time a felony conviction may be used to support a finding of PFO, and the age of the defendant when the felonies were committed. *See* KRS 532.080. None of these details appear in KRS 520.030. In fact, the Commonwealth's reading of KRS 520.030 would be even broader than the PFO statute because, unlike the PFO statute, there would be no time limit on how long the previous felony could be used to support a second-degree escape conviction. *See* KRS 532.080(2)(c), (3)(c) (describing timing considerations for PFO convictions). Under the Commonwealth's approach to KRS 520.030, it would not matter how old the previous felony conviction is; it could always be used to enhance third-degree escape to second-degree escape for convicted felons.

This Court reads the statute to require a defendant to be in custody *because* of the felony charge or conviction in order to support a second-degree escape charge based on escape from custody. In other words, this part of the statute would apply only when the defendant escapes while presently charged with, or currently serving a sentence for, a felony. The statute does not distinguish between different statuses of offenders based on past offenses.

Any ambiguity in the phrase "being charged with or convicted of a felony" can be addressed by looking at two canons of construction. First, when a word's meaning is ambiguous, this Court has held: "The clue to which meaning was intended by the legislature is found in the grammatical structure of the sentence in which the

phrase is used—its statutory context." *Devasier v. James,* 278 S.W.3d 625, 632 (Ky.2009). In the phrase "being charged with or convicted of a felony, he escapes from custody" the word "being" implies that the defendant must be *currently* charged with a felony or *currently* serving a sentence for a felony when he escapes from custody. The phrase requires that the defendant be under the present condition of "being charged with or convicted of a felony."

■ Second, "[t]he rule of lenity requires any ambiguity in a statute to be resolved in favor of a criminal defendant." *White v. Commonwealth,* 178 S.W.3d 470, 484 (Ky.2005). Here, the narrower reading that "being ... convicted of a felony" means "currently serving a sentence for a felony," rather than "having ever been convicted of a felony," is in Appellant's favor.

For these reasons, the Commonwealth's reading of KRS 520.030 is not correct, and it cannot support Appellant's conviction under this jury instruction, particularly since no previous felony conviction was even mentioned, even had the Commonwealth's theory been correct. Because the jury instruction did not include the necessary elements to establish second-degree escape by Appellant's leaving custody while being charged with or convicted of a felony, it cannot support a conviction under that theory. Additionally, the evidence would not support such a conviction.

### b. Escape from a Detention Facility

■ The Court of Appeals upheld the jury instruction under a different interpretation of KRS 520.030. It found that the Commonwealth proceeded under the theory of escape from a detention facility rather than escape from custody while convicted of a felony, and that the jury instruction included all the elements necessary for a

conviction under that part of the statute. The Court of Appeals' theory is that Appellant was still under the control of the FCDC (which is obviously a detention facility) as part of his HIP agreement, and so by leaving the control of the FCDC, Appellant escaped from a detention facility. Under this theory, all the jury had to find was that Appellant was in the custody of the FCDC when he escaped, equating custody with being in a detention facility. The jury instruction did reference custody and the FCDC, and so the Court of Appeals found that it was not erroneous.

But the Court of Appeals' interpretation of the statute is not tenable because of the definition of "detention facility." A detention facility is "any building and its premises used for the confinement of a person ... [c]harged with or convicted of an offense." KRS 520.010(4). The definition focuses on a "building and its premises." Reading this statute in combination with the definition of escape, KRS 520.010(5), an escape from a detention facility must involve leaving, or failing to return to, a specific building and its premises. Although the FCDC is obviously a detention facility under the statute, Appellant's escape did not involve leaving the FCDC building or its premises. Rather, he escaped by leaving his mother's house without permission of his caseworker.

The Court of Appeals relied on *Commonwealth v. Johnson,* 615 S.W.2d 1 (Ky. App.1981). In *Johnson,* a defendant serving a sentence for a misdemeanor escaped while on work-release from the jail. *Id.* The *Johnson* court found that the defendant could be convicted of second-degree escape because he failed to return to a detention facility after an authorized, temporary leave. *Id.* The Court of Appeals in the case at bar analogized escaping from work release to escaping from home incarceration. But in *Johnson,* the defendant

escaped by failing to return to the jail, which was the detention facility where he was being held. Here, Appellant escaped by leaving his mother's house, not by leaving or failing to return to the FCDC building or premises.

Because the jury instruction did not include the necessary elements to establish second-degree escape by Appellant's leaving a detention facility to which he had actually been confined, it cannot support a conviction under that theory.

For these reasons, the jury instruction did not include all the elements of second-degree escape under either part of the statute-escape from custody while charged with or convicted of a felony, or escape from a detention facility. It was erroneous.

### 2. Jury Instruction Was Palpable Error

■ This error was not preserved, and so we review for palpable error under RCr 10.26. "A palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr 10.26.

This case is similar to *Varble v. Commonwealth*, 125 S.W.3d 246 (Ky.2004). The Court in *Varble* reversed a conviction for manufacturing methamphetamine because the jury instruction was actually an instruction for possession of drug paraphernalia, a lesser offense. *Id.* at 255. Here, the jury instruction included all the elements necessary for third-degree escape but not for second-degree escape, the crime Appellant was actually convicted of. *See* KRS 520.040(1) ("A person is guilty of escape in the third degree when he escapes from custody.").

In three recent cases, this Court has held that this type of erroneous jury instruction is palpable error. In *Stewart v. Commonwealth*, 306 S.W.3d 502 (Ky.2010), the jury instruction did not require the jury to make a finding about the underlying misdemeanor conviction that was used to enhance the charged misdemeanor to a felony. This Court found palpable error because "[a]n essential element ... was missing from the instructions." *Id.* at 509.

Similarly, in *Carver v. Commonwealth*, 303 S.W.3d 110 (Ky.2010), the erroneous jury instruction listed a misdemeanor as a qualifying felony conviction for a PFO charge. Although the defendant had three felony convictions that could have properly been listed as qualifying convictions, and evidence of those convictions was presented during the penalty phase, this Court held that the erroneous instruction was palpable error because the instruction as written did not include all the elements necessary for a PFO conviction. *Id.* at 123.

In *Sanders v. Commonwealth*, 301 S.W.3d 497 (Ky.2010), the jury instruction listed a felony conviction for possession of drug paraphernalia as a qualifying conviction for a PFO charge, which is disallowed under KRS 218A.500. Despite the fact that evidence was presented at trial of four other felony convictions, any two of which could have been listed as qualifying convictions, the Court found that the error in the jury instructions was palpable error. *Id.* at 499–500.

In *Commonwealth v. McCombs*, 304 S.W.3d 676 (Ky.2009), this Court explained that the reasoning in the *Stewart, Carver,* and *Sanders* line of cases is "limited to those situations where the jury instructions lead the jury to convict the defendant of a crime, but the elements contained in the jury instructions actually establish a

different, uncharged crime or no crime at all." *Id.* at 682. In cases involving jury instructions that have errors in specific elements but that are "consistent with the charged crime," the error will not necessarily be palpable. *Id.*

This case falls under the *Stewart, Carver*, and *Sanders* line of cases. As explained above, the instruction did not properly list the elements of second-degree escape under either part of the statute (escape from custody while charged with or convicted of a felony, or escape from a detention facility). The findings in the jury instruction would support a conviction for third-degree escape under KRS 520.040, but of course that was not the crime Appellant was convicted of here. Because an essential element was missing from the instruction such that it actually established a different, uncharged crime, the instruction constitutes palpable error and Appellant's conviction must be reversed.

Our holdings on the motion for directed verdict and the jury instruction may appear contradictory: In this case, we are holding that it was not clearly unreasonable for a jury to find Appellant guilty of second-degree escape, but that the jury instruction constituted palpable error because it did not correctly list the elements of second-degree escape. These holdings are not contradictory because they consider different issues using different analyses, and, in a sense, require different relief. In ruling on the motion for directed verdict, we look at the evidence the Commonwealth presented at trial to decide whether it was unreasonable for the jury to find Appellant guilty under the second-degree escape statute. By moving for a directed verdict, the Appellant claimed he was entitled to an acquittal based on insufficiency of the evidence, which would bar any further proceedings. In considering the jury instruction, we compare the given instruction to the second-degree escape statute to determine whether the elements were properly listed. In making this claim, Appellant only argues that his conviction was based on a legally flawed jury instruction, which at most would mean reversal of his conviction while leaving open the possibility of future proceedings.

Here, Appellant was not properly convicted of second-degree escape under the jury instruction as given, but he could have been convicted if a correct instruction had been given because of the evidence established at trial. *See Carver*, 303 S.W.3d at 123 (finding that jury instruction with missing element was palpable error even though "there was ample evidence presented at trial" for defendant to be convicted "had the jury been properly instructed").

As this Court noted in *Carver*, "[f]acts are stubborn things." 303 S.W.3d at 123. In *Carver*, we said that we could not affirm a conviction for a crime "greater than that which the jury instructions would permit," *id.*, and a retrial on the conviction in that case was a "small price to pay to protect the integrity of our jury instructions," *id.* at 124. The same reasons support our holding in this case.

**D. Sample Instruction**

The Commonwealth requests a sample instruction for second-degree escape from a home as a detention facility in the home incarceration program. The following should suffice:

> You will find the Defendant guilty of second-degree escape under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about _____ (date) and before the finding of the Indictment herein, he escaped from _____ (the home designated in defendant's

Home Incarceration Program agreement);

AND

B. That at the time of such escape, he was confined to _____ (the home) under the terms of the Home Incarceration Program [and his absence therefrom was not authorized by the terms of the Home Incarceration Program].

### E. An Instruction on Third–Degree Escape Was Not Supported By the Evidence

 Finally, we address Appellant's claim that he should have received an instruction for third-degree escape as a lesser-included offense. At trial, Appellant requested an instruction on third-degree escape.

 "A court is required to instruct a jury on all offenses that are supported by the evidence." *Clark v. Commonwealth*, 223 S.W.3d 90, 93 (Ky.2007). But a defendant is only entitled to an instruction on the lesser offense if the jurors could rationally find that he was not guilty of the primary offense (here, second-degree escape), but guilty of the lesser offense (here, third-degree escape). *Smith v. Commonwealth*, 737 S.W.2d 683, 688 (Ky.1987).

There is no dispute about the facts in this case. Appellant removed his ankle bracelet and left his mother's house without permission. The only question is whether that action is second-degree escape or third-degree escape. Because we hold that for the purposes of the escape statutes a home in which a person is confined under a HIP agreement is a detention facility, and leaving the home without permission is second-degree escape, there is no way that a jury could have found that Appellant committed third-degree escape but not second-degree escape. Of course, a jury may disbelieve the Commonwealth's

evidence that Appellant committed those acts, but in such a case, it would simply acquit. The jury could not find Appellant guilty of third-degree escape but not guilty of second-degree escape in this case.

Therefore, Appellant was not entitled to an instruction on third-degree escape and there was no error.

### III. Conclusion

We affirm the Court of Appeals on the issues of the motion for directed verdict and the instruction for third-degree escape, but we find that the instruction for second-degree escape constitutes palpable error. We therefore reverse and remand for a new trial.

All sitting. All concur.