RENDERED:  OCTOBER 2, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0143-MR


RANDALL NORTHCUTT                                      APPELLANT


APPEAL FROM FAYETTE CIRCUIT COURT
v.             HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 18-CR-00131


COMMONWEALTH OF KENTUCKY                               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KRAMER, AND TAYLOR, JUDGES.

KRAMER, JUDGE:  Randall Ray Northcutt was convicted in Fayette Circuit

Court of escape in the second degree[1] and of being a persistent felony offender in

the first degree ("PFO I"). [2]  He now appeals.  Upon review, we affirm.

---

[1] *See* Kentucky Revised Statute ("KRS") 520.030.

[2] *See* KRS 532.080(3).

On May 9, 2014, Northcutt was convicted of third-degree burglary in Fayette Circuit Court and thereafter began serving a three-year sentence of incarceration. On September 1, 2017, he was released from prison and allowed to serve the remainder of his sentence[3] through participation in the Home Incarceration Program ("HIP"). As a condition of his home incarceration, Northcutt was required to wear an ankle bracelet and was prohibited from leaving the designated area where he was confined (*i.e.*, his home at 1600 Clayton Avenue, and part of its curtilage, in Lexington, Kentucky) without permission of his HIP caseworker, Drew Chism. The ankle bracelet contained an electronic transmitter which, if broken, was designed to send an email notification of a "master tamper violation" to HIP.

Approximately three weeks after Northcutt began his participation in HIP, the electronic transmitter in his ankle bracelet was broken; HIP received an email to that effect. After verifying the master tamper violation through HIP's monitoring website, Chism tried, unsuccessfully, to contact Northcutt by telephone. Thereafter, he attempted to locate Northcutt at Northcutt's home address and was likewise unsuccessful. But, using geolocation software, Chism found Northcutt's ankle monitor on a road outside the area where Northcutt had

---

[3] The record does not disclose when Northcutt's three-year term commenced or when it would have otherwise ended, but Northcutt was undisputedly continuing to serve that term on September 27, 2017, when his ankle monitor was removed and he fell out of contact with HIP.

been allowed to be under the terms of his HIP agreement. Upon finding it, Chism noted the ankle monitor's strap had clearly been cut. Based upon Chism's investigation, a warrant was issued for Northcutt's arrest. Northcutt was eventually arrested on December 12, 2017, after authorities located him at 1880 Dunkirk Drive in the Cardinal Valley area of Lexington, Kentucky – an area well outside the permitted vicinity of his home incarceration.

Ultimately, Northcutt was indicted by a grand jury in Fayette Circuit Court for second-degree escape and PFO I. The PFO I charge was based on two underlying felony convictions: (1) Northcutt's 2014 third-degree burglary conviction; and (2) Northcutt's earlier conviction, in 2007, of second-degree burglary. The case proceeded to a jury trial on November 27, 2018; Northcutt elected to present no evidence at trial, and the Commonwealth's evidence was consistent with what is set forth above. Upon the conclusion of the guilt phase of the trial, the jury found Northcutt guilty of second-degree escape. Prior to the completion of the penalty phase of trial, Northcutt entered a conditional plea of guilty to the PFO I charge. Pursuant to his conditional plea, Northcutt reserved the right to raise the issues presented in this appeal, and the Commonwealth recommended the minimum sentence of one year on the second-degree escape conviction, enhanced to the minimum 10 years by the PFO I conviction. On January 15, 2019, the trial court rendered its final judgment sentencing Northcutt

to 10 years' imprisonment. Northcutt now appeals. Additional facts will be discussed as necessary.

As to the substance of his appeal, Northcutt's assumption throughout these proceedings has been that a prior felony conviction is an essential precondition of second-degree escape. And, armed with that assumption, Northcutt makes the following two arguments.

First, Northcutt reasons that *because* second-degree escape must be predicated upon a prior felony conviction, it therefore qualifies as an "enhanced" offense. Based upon that, he argues, the rule prohibiting "double enhancement" applies.[4] In other words, he contends that if his prior felony conviction for third-degree burglary was the basis for enhancing his escape charge to second-degree escape, his prior felony conviction for third-degree burglary could not *also* have been the basis for prosecuting him for PFO I. Therefore, he claims, it was error for the trial court to permit the Commonwealth to prosecute him for PFO I.

---

[4] *See Corman v. Commonwealth*, 908 S.W.2d 122, 123 (Ky. App. 1995), explaining:

> The rule is now established that when a single prior felony is utilized to create an offense or enhance a punishment at the trial of the second crime, that same prior felony cannot be used at that trial to prosecute the defendant as a persistent felony offender. If, however, the prior felony used to underlie PFO conviction is a separate prior felony from the one used to create the offense or enhance its punishment, the offense can be further enhanced under the PFO statute.

(Citations omitted.)

-4-

Second, Northcutt reasons *if* all the jury needed to know (for purposes of finding him guilty of second-degree escape) was that he had been convicted of a felony, then it was unnecessary for the Commonwealth to go into any further detail regarding the *nature* of his prior felony conviction. Accordingly, Northcutt argues, the trial court "prejudiced" his defense by denying his requests, as set forth in his motion *in limine*, to: (1) require the Commonwealth to accept his stipulation, made under the auspices of *Old Chief v. United States*,[5] "that he was a convicted felon subject to the rules of Probation and Parole"; and (2) "exclude at trial all other evidence introduced to prove [he] was a convicted felon."

However, Northcutt's assumption underlying his appeal is founded upon a misapprehension of the law: A prior felony conviction is *not* a precondition of second-degree escape because that offense "does not distinguish between different statuses of offenders based on past offenses." *Lawton v. Commonwealth*, 354 S.W.3d 565, 572 (Ky. 2011). Indeed, that much is apparent from a cursory reading of KRS 520.030, which sets forth the offense as follows:

> (1) A person is guilty of escape in the second degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody.
>
> (2) Escape in the second degree is a Class D felony.

---

[5] 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

From the plain language of this statute, a person who *escapes from a detention facility*, who was merely in the detention facility due to a *misdemeanor* offense, is guilty of second-degree escape. *See, e.g., Commonwealth v. Johnson*, 615 S.W.2d 1 (Ky. App. 1981).

A person who *escapes from custody*, who was in custody merely due to a felony *charge*, is guilty of second-degree escape. *See, e.g., Weaver v. Commonwealth*, 156 S.W.3d 270 (Ky. 2005).

Moreover, under the Kentucky Supreme Court's interpretation of this statute, a person *convicted of a felony* is guilty of second-degree escape if, and only if, that person escapes from custody *while* serving a felony sentence. *See Lawton*, 354 S.W.3d at 573. Thus, a convicted felon who is *not* serving a felony sentence would *not* be guilty of second-degree escape if he or she is taken into custody due to a misdemeanor offense and, while in custody (as opposed to a detention facility), then escaped.

Accordingly, it is apparent that Northcutt's first argument set forth above, founded upon his incorrect assumption of second-degree escape, lacks merit. There was no "double enhancement."

His second argument also lacks merit. To review, Northcutt argues the trial court "prejudiced" his defense by denying his requests, as set forth in his motion *in limine*, to: (1) require the Commonwealth to accept his stipulation, made

-6-

under the auspices of *Old Chief*, "that he was a convicted felon subject to the rules of Probation and Parole"; and (2) "exclude at trial all other evidence introduced to prove [he] was a convicted felon." At the onset, however, we note that even where our Courts have applied the rule of *Old Chief*, we have explained that a violation of that rule does not automatically warrant reversal. Specifically:

> In *Anderson v. Commonwealth*, [281 S.W.3d 761 (Ky. 2009), the Kentucky Supreme Court] adopted the limited holding from *Old Chief*, that "a defendant charged with being a felon in possession of a firearm may stipulate to having a prior felony conviction, even without the Commonwealth's consent." 281 S.W.3d 761, 762 (Ky. 2009). In *Anderson*, the defendant was charged with possession of a handgun by a convicted felon and the Commonwealth sought to introduce evidence of Anderson's prior felony conviction for receiving stolen property and escape. *Id*. Anderson offered to stipulate to being a convicted felon to avoid potential prejudice from disclosing the details of his prior convictions, but the trial court denied his request. *Id*. at 762-63. The Commonwealth introduced the details to the jury, and Anderson was ultimately convicted of the firearm possession charge. *Id*. at 763.

> In *Old Chief*, the United States Supreme Court acknowledged "that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." 519 U.S. at 185, 117 S.Ct. 644. Further, the Court concluded that "there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence." *Id*. at 191, 117 S.Ct. 644. In *Anderson*, this Court decided to join the overwhelming majority of courts by adopting *Old Chief*, and holding that:

upon request, a criminal defendant charged with being a felon in possession of a firearm may stipulate (with the Commonwealth's agreement) or admit (if the Commonwealth does not agree) that the defendant has been previously convicted of a felony. Such a stipulation or admission would mean that the jury would simply be informed that the defendant was a convicted felon, for purposes of the felon in possession of a firearm charge, but would not be informed of the specifics of the defendant's previous felony conviction(s).

281 S.W.3d at 766.

. . . . However, "no error . . . or defect in any ruling . . . is ground for granting a new trial or for setting aside a verdict . . . unless it appears to the court that the denial of such relief would be inconsistent with substantial justice." *Id*. (quoting Kentucky Rule of Criminal Procedure (RCr) 9.24). "A non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009).

*Ward v. Commonwealth*, 568 S.W.3d 824, 835-36 (Ky. 2019).

In *Ward*, for example, the defendant's proffered stipulation was disallowed by the trial court; the rule of *Old Chief* was deemed violated, but nevertheless, any resulting error was deemed harmless because:

At trial, the Commonwealth introduced very little evidence about Ward's prior felony conviction. A single witness who obtained certified copies of Ward's criminal record testified that Ward was convicted of first-degree

-8-

robbery in Jefferson County, that he entered a guilty plea, and provided the date of the offense. No other information was given. . . . The jury was not given any violent details, or even any information regarding what constitutes first-degree robbery. We cannot say that "there was a reasonable possibility that the jury's knowledge of [Ward's] specific prior convictions might have contributed to his conviction any more than their general knowledge of his status as a convicted felon would have." *Anderson*, 281 S.W.3d at 767. While the trial court's denial of Ward's request to stipulate his convicted felon status was error, it was harmless.

*Id*. at 836.

Here, beyond noting that the trial court denied his request to stipulate during trial "that he was a convicted felon subject to the rules of Probation and Parole," Northcutt does not explain how the trial court otherwise "prejudiced" his case. Moreover, we cannot say "there was a reasonable possibility that the jury's knowledge of [Northcutt's] specific prior convictions might have contributed to his conviction any more than their general knowledge of his status as a convicted felon would have." *Anderson*, 281 S.W.3d at 767. When the Commonwealth informed the jury of Northcutt's prior felony conviction, it only did so during Officer Chism's testimony, and to the following extent:

> COMMONWEALTH: In case number 14-CR-264, out of the Fayette Circuit Court, the date of the offense is February 10th of 2014. The offense is burglary in the third degree. The defendant's name is "Randall Ray Northcutt." The date the judgment was entered was May 9th of 2014 and he was sentenced to three years. And so, he was released on that sentence to the home

-9-

incarceration program, and you were supervising him on that?[6]

OFFICER CHISM: Yes, ma'am.

COMMONWEALTH: And remind me what date it was that he was released?

OFFICER CHISM: September 1st of 2017.

Like *Ward*, the jury in this matter was only informed of the name of Northcutt's prior felony offense and the dates associated with it (*i.e.*, the date he committed the offense, was convicted of it, and was later released to HIP while serving his sentence). The jury was not given any violent details of his prior offense, much less any information regarding what constitutes third-degree burglary. Thus, *if* the trial court erred in denying Northcutt's request to stipulate "that he was a convicted felon subject to the rules of Probation and Parole," its error was harmless.

However, the trial court's denial of Northcutt's motion did *not* constitute error, and for at least three reasons. First, to the extent the rule of *Old Chief* has been adopted in Kentucky, its application has been limited to prosecutions of a specific type of status offense; namely, "where the defendant

---

[6] The trial court only permitted the Commonwealth to read this portion of Northcutt's prior judgment to the jury. The jury was not permitted to see Northcutt's judgment.

-10-

stands charged with being a felon in possession of some type of firearm[.]"[7]  Here,

Northcutt was charged with *second-degree escape*, which is *not* a status offense.

Second, where – as here – the Commonwealth elects to prosecute a

defendant for second-degree escape based upon a theory that he or she *escaped*

*from custody while charged with a felony or serving a felony sentence*,[8] the

---

[7] *Anderson*, 281 S.W.3d at 766.  More fully, the *Anderson* Court explained:

> We recognize that defendants may wish to admit or stipulate to previous
> convictions or other matters in situations not involving felon in possession of a
> handgun charges, such as cases involving PFO charges.  But the application of
> *Old Chief*'s rationale to other cases and situations has not been argued by the
> parties to this case and, thus, is not properly before us.  And the United States
> Supreme Court has not expressly extended *Old Chief* to other scenarios.  So we
> emphasize that our holding today is limited only to cases like the one at hand—
> where the defendant stands charged with being a felon in possession of some type
> of firearm—and should not be construed as a license for criminal defendants
> unilaterally to admit over the Commonwealth's objection any other factors or
> elements of the Commonwealth's case that the defendant wishes to conceal from
> the jury.  Thus, in all other circumstances where a defendant's status as a
> convicted felon is relevant, such as PFO proceedings, courts should continue to
> rely upon our previous holding that "the prosecution is permitted to prove its case
> by competent evidence of its own choosing, and the defendant may not stipulate
> away the parts of the case that he does not want the jury to see."

*Id*. (footnotes omitted).

[8] "Based on the facts, the prosecutor has a certain amount of discretion in how he or she charges
[second-degree] escape."  *Lawton*, 354 S.W.3d at 567.  As noted, *Lawton* provides that HIP
qualifies as both "custody" and a "detention facility" for purposes of second-degree escape.
Here, while it certainly caused no prejudice to Northcutt, the Commonwealth's case against
Northcutt apparently *combined* those theories.  Specifically, the jury was instructed:

> You will find the Defendant guilty of Escape, Second Degree under this
> Instruction if, and only if, you believe from the evidence beyond a reasonable
> doubt all of the following:
>
> > A.  That in this county on or about September 25, 2017, and before
> > the finding of the Indictment herein, the Defendant was serving a
> > sentence for Burglary, Third Degree, a Class D Felony, when he

-11-

Kentucky Supreme Court has held that the Commonwealth has a duty to prove *what* the felony charge or conviction was. *See Cohron v. Commonwealth*, 306 S.W.3d 489, 495-96 (Ky. 2010), explaining:

> Since it bore the burden of proof, the Commonwealth had the responsibility to present evidence of the fact that Cohron was in custody on June 12 on a charge or conviction of a felony offense. Since this is what separates second-degree escape from third-degree escape, the fact that Cohron had been charged with felonies at the time of the June 12 escape was an element that had to be proved beyond a reasonable doubt. Because there was a total absence of evidence of that element, the jury could only surmise what the June 9 charges were.
>
> We do not believe it is obvious to an average person what charges are felonies and what are misdemeanors, *particularly when the offenses charged were not specifically enumerated for the jury*.

(Emphasis added.)

Third, the latter part of Northcutt's proffered stipulation (*i.e.*, that he was "subject to the rules of Probation and Parole") was a misrepresentation. Northcutt was under home incarceration, *not* "Probation and Parole." Among the

---

escaped from 1600 Clayton Avenue, Lexington, Kentucky, the home designated in the Defendant's Home Incarceration Program agreement;
**AND**
B. That at the time of his escape, the Defendant had been confined to 1600 Clayton Avenue, Lexington, Kentucky under the terms of the Home Incarceration Program and his absence therefrom was not authorized by the terms of the Home Incarceration Program.

-12-

many salient differences between those two forms of rehabilitation, a defendant on probation or parole is not considered to be in "custody" for purposes of any "escape" offense. *See* KRS 520.010(2). Whereas, a defendant on "home incarceration" is not only considered to be in "custody," but is also considered to be incarcerated in a "detention facility" for purposes of KRS 520.030. *See Lawton*, 354 S.W.3d at 569-70.

In short, the trial court would have improperly undermined the Commonwealth's case against Northcutt if it had *granted* Northcutt's motion to (1) require the Commonwealth to accept his stipulation "that he was a convicted felon subject to the rules of Probation and Parole"; and (2) "exclude at trial all other evidence introduced to prove [he] was a convicted felon." Therefore, it did not err by denying his motion.

We have reviewed the breadth of what Northcutt has asserted in this appeal, none of which indicates the Fayette Circuit Court erred in any respect. As such, we AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy A. Durham, II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

M. Brandon Roberts
Assistant Attorney General
Frankfort, Kentucky