RENDERED:  JUNE 9, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0588-MR

TOBY AKERS                                                                         APPELLANT

v.

APPEAL FROM FLOYD CIRCUIT COURT
HONORABLE THOMAS M. SMITH, JUDGE
ACTION NO. 20-CR-00122

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, GOODWINE, AND KAREM, JUDGES.

KAREM, JUDGE:  Toby Akers ("Akers") appeals his convictions for second-degree escape and being a first-degree persistent felony offender.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In a pending circuit court case, the Floyd Circuit Court placed Akers in a home incarceration program ("HIP") as a condition of his pretrial release.

Akers enrolled in a HIP program managed by a private company named East Kentucky Home Incarceration ("East Kentucky"). Before his enrollment, a representative from East Kentucky reviewed East Kentucky's registration form and contract with Akers while Akers was incarcerated. Akers signed the contract and initialed each page.

Approximately one (1) month after being placed on HIP, Akers cut his ankle monitor and left his home without permission. Akers was ultimately apprehended at a hotel and charged with second-degree escape.

At his trial for second-degree escape, Akers testified that while he was on HIP, a man named Wes Martin had threatened him and his family. Akers asserted that he removed his ankle monitor and left his home after the police's alleged failure to act regarding Martin's threats. However, on rebuttal, various witnesses testified that no record existed of Akers contacting the police.

Akers further testified at his trial that he had used methamphetamine in his cell before meeting with the East Kentucky representative to sign the East Kentucky contract. In addition, other inmates allegedly around Akers on the day he signed the East Kentucky contract, including Akers's son Josh, testified that Akers exhibited slurred speech, glassy eyes, and erratic behavior on the day in question. Nevertheless, Josh acknowledged on cross-examination that Akers could understand basic questions.

Additionally, Akers testified that he had not read the East Kentucky contract before signing. Specifically, Akers claimed that the East Kentucky representative offered to read the paperwork to him, but Akers replied, "What does it really matter? I've already signed them anyway."

The jury ultimately found Akers guilty of second-degree escape and being a first-degree persistent felony offender ("PFO"), and the circuit court sentenced him to sixteen (16) years imprisonment. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### a. Third-Degree Escape Jury Instruction

Akers first argues on appeal that the trial court should have instructed the jury on third-degree escape as a lesser-included offense. As a preliminary matter, we review a trial court's decision declining to give a jury instruction for an abuse of discretion. *Williams v. Commonwealth*, 178 S.W.3d 491, 498 (Ky. 2005). An abuse of discretion occurs when a trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

Under Kentucky law, "[a] court is required to instruct a jury on all offenses that are supported by the evidence." *Clark v. Commonwealth*, 223 S.W.3d 90, 93 (Ky. 2007) (citation omitted). Our Supreme Court has stated that "a

defendant is entitled to an instruction on a lesser-included offense if the evidence would permit a jury to rationally find him guilty of the lesser-offense and acquit him of the greater." *Smith v. Commonwealth*, 737 S.W.2d 683, 687 (Ky. 1987) (citation omitted).

Turning to the statutory elements of escape, under Kentucky Revised Statute ("KRS") 520.030, an individual is guilty of second-degree escape when that person "escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody." Alternatively, a person is guilty of third-degree escape when that person "escapes from custody." KRS 520.040. Under both statutes, "escape" is defined as "departure from custody or the detention facility in which a person is held or detained when the departure is unpermitted[.]" KRS 520.010(5).

Additionally, the Kentucky Supreme Court has determined that "for an incarceree in HIP, leaving the specified home without permission . . . is escape from a detention facility under KRS 520.030(1). Escape from such a home can therefore constitute second-degree escape." *Lawton v. Commonwealth*, 354 S.W.3d 565, 569 (Ky. 2011). In *Lawton*, the defendant was placed in HIP, obliged to wear an ankle bracelet, and proscribed from leaving his mother's home without permission. 354 S.W.3d at 567. The defendant subsequently removed the bracelet, left his mother's house without permission, and was convicted of second-

degree escape. *Id.* The Kentucky Supreme Court rejected the defendant's argument on appeal that he was entitled to a third-degree escape instruction as a lesser-included offense, stating:

> Because we hold that for the purposes of the escape statutes a home in which a person is confined under a HIP agreement is a detention facility, and leaving the home without permission is second-degree escape, there is no way that a jury could have found that Appellant committed third-degree escape but not second-degree escape.

*Id.* at 576. The Court went on to comment, "[o]f course, a jury may disbelieve the Commonwealth's evidence that Appellant committed those acts, but in such a case, it would simply acquit. The jury could not find Appellant guilty of third-degree escape but not guilty of second-degree escape in this case." *Id.*

This case presents a very similar situation. No dispute exists that Akers cut his ankle bracelet and left the house without permission. No circumstances in this case change the home from which he escaped into something other than a "detention facility" under the second-degree escape statute. KRS 520.030(1); *Lawton*, 354 S.W.3d at 569. Thus, there was no way for a jury to find that he escaped from "custody" but not a "detention facility." Because the jury could not rationally have found Akers guilty of third-degree escape but not guilty of second-degree escape, the trial court did not err in declining to a jury instruction on third-degree escape. We see no abuse of discretion.

While Akers argues that some jurors may have felt Akers's alleged intoxication rendered the home incarceration contract invalid or somehow rendered him incapable of knowing he was escaping a detention facility, his state of mind was not an element of the offense. KRS 520.030 requires only that the defendant escapes from a detention facility, with "escape" defined as an unpermitted "departure" from the detention facility. KRS 520.030, KRS 520.010(5). Akers did not dispute that he intentionally and without permission left the home on the day he removed his ankle monitor.

Moreover, a binding contract with the HIP provider is not a requirement under KRS 520.030. Rather, the court orders HIP, and an individual's obligation to remain within the detention facility unless otherwise granted permission is statutory. KRS 532.220(1). Thus, the court's decision was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

### b. **Other Alleged Errors**

Akers next argues that the trial court committed an error during his sentencing/PFO stage by making certain statements to the jury. Akers did not preserve this alleged error by objection, and Akers is requesting us to engage in a "palpable error" review under Kentucky Rule of Criminal Procedure ("RCr") 10.26.

Under RCr 10.26, an unpreserved error may generally be considered on appeal if the error is "palpable," "affects the substantial rights of a party[,]" and results in "manifest injustice." Kentucky's Supreme Court has stated that a palpable error "must be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks and citations omitted). Moreover, a palpable error affects the substantial rights of the party "only if it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth*, 160 S.W.3d 744, 762 (Ky. 2005) (citations omitted).

In this case, the Commonwealth introduced two certified judgments of Akers's prior felony convictions. Thereafter, the trial court stated the following:

> That [the judgments introduced as exhibits] includes information that the defendant was convicted of receiving stolen property, over $500, by final judgment on February 21, 2014, and prior to the conviction for escape. And, prior to February 21, 2014, he was convicted of unlawful possession of methamphetamine precursor, theft by deception, and receiving stolen property by final judgment of Floyd Circuit Court, May 10, 2021. Meaning, in essence, there are two felony convictions prior to the commission of the charge involved in this case.

The trial court then read the first-degree PFO instruction to the jury, including a statement regarding the presumption of innocence and the requirement that the jury

find Akers guilty of this charge only if the Commonwealth proved all the statutory elements beyond a reasonable doubt.

On appeal, Akers argues the trial court's statement invaded the province of the jury by making a finding of fact relevant to the PFO charge. However, we do not see a "substantial possibility" that the trial's result would have differed had the trial court not made the comments. The trial court did not give an opinion regarding Akers's guilt as to being a first-degree PFO or whether the Commonwealth had met its burden. Rather, the trial court simply stated that the Commonwealth's exhibits showed that Akers had two prior felony convictions. Additionally, the trial court instructed the jury concerning the presumption of innocence and that the Commonwealth was required to prove each element beyond a reasonable doubt. We discern no palpable error.

Akers next argues palpable error occurred when the trial court allowed the jury to view, in violation of KRS 532.055(2)(a)2. and *Blane v. Commonwealth*, 364 S.W.3d 140, 152 (Ky. 2012), *abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814, 828 (Ky. 2015), a certified copy of a judgment stating that Akers had a PFO first-degree charge dismissed. During the sentencing portion of a trial, the Commonwealth may introduce evidence of a defendant's prior convictions, both felonies and misdemeanors. KRS 532.055(2)(a). However, under Kentucky law, "it is . . . well settled that the Commonwealth cannot

introduce evidence of charges that have been dismissed or set aside." *Blane*, 364 S.W.3d at 152 (citations omitted),.

Nevertheless, as the Court discussed in *Chavies v. Commonwealth*, such an error does not necessarily require reversal under the "palpable error" standard of review. 354 S.W.3d 103, 114-16 (Ky. 2011), *abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015). In *Chavies*, the Kentucky Supreme Court determined that the Commonwealth committed an error by introducing a prior dismissed indictment during the trial's penalty phase. *Id*. at 114-15. Nonetheless, the Court concluded that the error was not palpable because the Commonwealth only introduced an indictment; "the dismissed and amended offenses were never pointed out to the jury by the trial judge, the Commonwealth, or the Commonwealth's witness"; and Chavies did not receive the maximum sentence for his convictions. *Id*. at 115.

Likewise, in this case, neither the trial court nor the Commonwealth mentioned or discussed Akers's dismissed charge, and he did not receive the maximum sentence for his convictions. Additionally, Akers had a considerable criminal record, having been convicted of seven Class D felonies and five misdemeanors. Because neither the trial court nor the Commonwealth discussed the dismissed PFO charge with the jury and given the middle-range sentence the jury endorsed despite Akers's lengthy criminal history, there is not a reasonable

-9-

likelihood the jury would have recommended a lesser sentence had it not received the exhibit. Thus, we do not find that a palpable error occurred in light of these facts.

Akers's final argument is that if this Court does not believe that either of the foregoing alleged errors rises to the level of palpable error, this Court considers the cumulative effect of both alleged errors and grants a new penalty phase. Under the cumulative-error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Cumulative error will be found "only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id*. However, because we have found that this case did not involve multiple errors "bordering . . . on the prejudicial," Akers's cumulative-error argument is without merit.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the judgment of the Floyd Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General
Frankfort, Kentucky