Quintin Danell LACKEY, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2014–SC–000001–MR

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

Counsel for Appellant: Susan Jackson Balliet, Assistant Public Advocate.

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, Thomas Allen Van De Rostyne, Assistant Attorney General.

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

A circuit court jury convicted Quintin Danell Lackey of second-degree escape and of being a first-degree Persistent Felony Offender. The resulting sentence was enhanced from five years' imprisonment on the escape conviction to twenty years' imprisonment as a persistent felony offender and judgment entered accordingly. Lackey now appeals this judgment as a matter of right.[1] For reasons stated below, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND.

A voicemail message from his parole officer notified Lackey that he would be returning to prison for violating his parole and directed him to report to the parole officer's office. The parole violation occurred a few days earlier when Lackey was terminated from an outpatient drug treatment program for absences.[2]

When Lackey reported to the parole officer's office, he was immediately handcuffed and placed under arrest by a police officer as directed by the parole officer. Lackey complained that the cuff on his left wrist was hurting him, so the police officer removed the cuff to make adjustments. Concerned that the cuff on the right wrist might also cause problems, the police offi-

---

1. Ky.Const. § 110(2)(b).

2. Lackey was on parole for drug offenses.

cer removed it from Lackey's right wrist. At no point was Lackey told he was free to leave, no longer under arrest, or no longer destined to return to prison.

Freed of his handcuffs, Lackey bolted for the door. The police officer lunged toward Lackey to block his escape. Their bodies collided, but Lackey repelled the police officer's maneuvers and exited the office into the building's front lobby. At this point, the chase was on. Lackey reached the building's front door; but before he could get through the door, the police officer propelled himself toward Lackey in an effort to tackle him. But the police officer fell to the floor, striking his head and suffering a laceration to his forehead. The police officer then wrapped his arms around one of Lackey's legs as he attempted to flee. But the police officer lost his grip, and Lackey sprang free and sprinted out of the building toward a nearby creek. The police officer gave chase, yelling for Lackey to stop.

Eventually, the local police department learned of Lackey's breakaway. A detective who was familiar with Lackey spotted him near the creek and yelled for him to stop. But Lackey continued to flee. The detective pursued on foot, ultimately tracking Lackey to a nearby house where he was apprehended.

Lackey was charged with one count each of first-degree escape, third-degree assault, second-degree fleeing or evading police, resisting arrest, third-degree criminal mischief, and being a first-degree persistent felony offender. Before trial, the Commonwealth dropped the charges for fleeing or evading police and criminal mischief. The jury acquitted Lackey of all charges except second-degree escape and the first-degree persistent felony offender

charge. The jury recommended Lackey's sentence be enhanced from five years' imprisonment to twenty years' imprisonment. The trial court adopted the jury's recommendation and entered judgment accordingly. This appeal followed.

## II. ANALYSIS.

### A. The Trial Court Properly Denied Lackey's Motion for Directed Verdict on Second–Degree Escape.

Lackey argues the trial court erroneously failed to direct a verdict of acquittal for his second-degree escape charge. Specifically, Lackey asserts that the instant facts do not meet the statutory elements of second-degree escape, i.e., he was not in custody nor was he currently serving a felony sentence. Lackey's argument is illogical and we reject it.

This issue was improperly preserved below. At trial, Lackey moved for a directed verdict on first-degree escape, arguing that there was insufficient proof that he used force. Instead, Lackey argued third-degree escape was the proper charge, saying nothing with regard to second-degree escape, except by implication. In the end, preservation is of little import here because the trial court's denial was not error as we explain below.

▮▮▮▮ When presented with a motion for directed verdict, a trial court "must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth."[3] A directed verdict should be given only if the evidence is insufficient "to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty...."[4] On appeal, if after reviewing the evidence as a whole, "it would be clearly unreasonable for a jury to

---

3. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

4. *Id.*

find guilt," [5] we will grant a defendant a directed verdict. To defeat a directed verdict motion, the Commonwealth must only produce "more than a mere scintilla of evidence."[6]

■ We turn to the statute creating second-degree escape to determine whether the Commonwealth presented sufficient evidence to defeat Lackey's attempted motion for directed verdict. Kentucky Revised Statutes (KRS) 520.030(1) defines the offense as follows:

A person is guilty of escape in the second degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody.

Initially, as both parties concede, we can ignore the detention facility language because the parole officer's office from which Lackey fled was not and has not been argued to be a detention facility. That leaves the question of whether Lackey was in "custody" or "convicted of a felony" as outlined by statute and our case law.

For the purposes of escape, *custody* is defined as "restraint by a public servant pursuant to a lawful arrest, detention, or an order of court for law enforcement purposes...." [7] Importantly, *custody* does not include the "supervision of probation or parole or constraint incidental to release on bail."[8] An *arrest* is constituted "by placing the person being arrested in restraint, or by his submission to the custody of the person making the arrest." [9]

Lackey makes the incredible argument that he was in custody when handcuffed but custody ended the moment the hand-

cuffs were removed—at his behest—because he was no longer subjected to any *physical* restraint. At that point, according to Lackey, the only restraint was the police officer's body blocking the door—a restraint that Lackey was able to overcome.

Lackey's argument is difficult to take seriously. We can concede that for a very brief period Lackey was not physically restrained. But that concession is not fatal to our determination that Lackey was in custody. If, as Lackey suggests, the removal of the handcuffs created a situation in which Lackey was free to leave, then why was he running and why was the police officer chasing him? Lackey may not have been physically restrained, but this Court has not limited its interpretation of *custody* within the context of escape to physical restraint—nor should it. To be sure, "custody requires control" [10]; but control exists in many forms apart from physical control.

We have repeatedly held a defendant to have escaped from custody despite the absence of any sort of physical obstacle. This comports both with the practicality of performing arrests and common sense. For example, in *Harris v. Commonwealth,* [11] we held a defendant was in custody despite no physical restraints. The arresting officer in *Harris* clearly informed Harris he was under arrest and Harris submitted to that authority. In Lackey's view, Harris was never in custody because he capitulated to police. It seems Lackey views peaceful, cooperative arrests as fiction and only arrests accom-

---

**5.** *Id.*

**6.** *Id.*

**7.** 7 KRS 520.010(2).

**8.** *Id.*

**9.** KRS 431.025(2).

**10.** KRS 520.010 Commentary (1976).

**11.** 2009 WL 735879, No. 2007–SC–000671 (Ky. March 19, 2009).

plished by brute force are sufficient to constitute custody. Much like Harris, Lackey was summoned to the parole officer's office for the explicit purpose of being arrested and returned to jail for violating the conditions of his parole. At no point, as Lackey conceded with his testimony, did Lackey view the situation differently.

We have also held what can essentially be classified as constructive custody [12] sufficient for purposes of second-degree escape. In *Stroud v. Commonwealth*,[13] for example, our predecessor Court held a participant in the Home Incarceration Program (HIP) to be in custody.[14] Of course, an individual subject to HIP is not physically restrained in any manner. Certainly, there is nothing that prevents a participant from fleeing his home despite the existence of the ankle monitor that notifies police of his whereabouts. The participant may eventually be subject to physical control—likely in short order given the ankle monitor—but there is no constant physical police presence in his home, *i.e.*, "detention facility." [15] Likewise, despite the absence of physical force or restraint, Lackey remained in custody after his handcuffs were removed. At the very least, like HIP participants, Lackey was controlled by *legal* authority. Lackey's argument regarding the Commonwealth's insufficient proof of custody fails.

██ Equally meritless is Lackey's argument he was not currently "charged with or convicted of a felony" [17] because he was on parole. Over time, our case law has interpreted the language in question to mean that a defendant charged with escape "must be *currently* charged with a felony or *currently* serving a sentence for a felony when he escapes from custody." [18] Lackey concedes that he was previously convicted of a felonious offense, but the gravamen of Lackey's argument is that he was not currently *serving* a felony sentence because he was on parole instead of incarcerated. The problem with this argument is that a parolee, while outside prison walls, is still serving his felony sentence.

██ *Parole* is defined as "[t]he conditional release of a prisoner from imprisonment before the full sentence has been served." [19] Put another way, "[t]he essence of parole is release from prison, before completion of the sentence, on the condition that the prisoner abide by certain rules *during the balance of the sentence*." [20] Lackey argues that because parole is extended by legislative and executive grace, it is not the same as incarceration—the only way, in Lackey's view, a defendant *serves* a sentence.

Taking this argument to its conclusion highlights its fallacy. As the Commonwealth points out in its brief, there are various gracious aspects to incarceration analogous to parole. For example, an in-

---

12. *See* Black's Law Dictionary (10th ed. 2014) ("Custody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control.").

13. 922 S.W.2d 382 (Ky. 1996).

14. *See also Lawton v. Commonwealth*, 354 S.W.3d 565 (Ky. 2011).

15. KRS 520.030(1); KRS 520.010(4).

17. KRS 520.030(1).

18. *Lawton*, 354 S.W.3d at 573.

19. Black's Law Dictionary (10th ed. 2014).

20. *Samson v. California*, 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) (emphasis added).

mate is capable of earning good-time credit for good behavior while incarcerated.[21] However, this credit may be rescinded just as parole may be rescinded. Incarceration is simply not the only way in which an individual convicted of a crime serves his sentence. Parole is "an established *variation* on imprisonment of convicted criminals." [22]

More importantly, *serve* carries with it no special relationship to incarceration alone. Instead, an individual may serve his sentence in various methods and ways, not the least of which is parole. Our criminal justice system has created these alternatives in an attempt to allow for more individualized rehabilitation and integration with society following criminal conviction.[23] There is simply no reason to slip *serve* and *parole* from their historical moorings. Parole is not freedom. A paroled felon is still serving his sentence for purposes of escape. The best indication of this conclusion may be the simplest: parole is *conditional* release—a violation of the designated terms results in a return to incarceration.

Admittedly, the Commonwealth did not present evidence detailing the intricacies of parole and its limited availability only to convicted felons. But the Commonwealth did introduce evidence of Lackey's prior conviction, the fact that it was a felony, and the associated twenty-eight-year term of imprisonment. Despite Lackey's protestations to the contrary, the jury was not ill informed in a manner reducing its role to mere guesswork or speculation.[24] At the very least, the jury was given enough information to draw a reasonable inference that Lackey was on parole from his previous conviction, *i.e.*, that he was "currently serving a sentence for a felony...." [25]

To be clear, in light of the evidence presented, it would not have been clearly unreasonable for a jury to find guilt. This is especially true when the evidence is considered in a light most favorable to the Commonwealth. Much more than a mere scintilla of evidence proving second-degree escape was presented. As a result, the trial court properly denied Lackey's motion for directed verdict.

## B. An Instruction on Third–Degree Escape was not Warranted Given the Evidence.

Finally, Lackey argues the trial court erroneously refused to instruct the jury on third-degree escape, a lesser-included offense.[26] Lackey's argument cen-

21. *See* KRS 197.045(1); Kentucky Corrections Policies and Procedures 15.3.

22. *Samson*, 547 U.S. at 850, 126 S.Ct. 2193 (quoting *Morrissey*, 408 U.S. at 477, 92 S.Ct. 2593) (emphasis added).

23. "The purpose of parole is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed, and alleviate the cost to society of keeping the individual in prison." 59 AM.JUR.2D *PARDON AND PAROLE* § 6 (updated May 2015) (internal citations omitted).

24. *See Moore v. Commonwealth*, 462 S.W.3d 378 (Ky. 2015).

25. *Lawton*, 354 S.W.3d at 573.

26. To constitute a lesser-included offense, the following requirements must be met:

> "(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
> (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or
> (d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property

ters on the jury somehow not believing he was currently serving a felony sentence despite uncontroverted evidence to the contrary. The question of whether there was sufficient evidence to warrant a third-degree escape instruction is a question of law to be reviewed de novo.[27]

 Generally speaking, a trial court must instruct the jury on the whole law of the case, *i.e.,* provide "instructions applicable to every state of the case deducible from or supported to any extent by the testimony."[28] This duty, however, does not mandate the trial court place before the jury "speculative theories ... merely because the testimony includes some basis for the speculation."[29] A trial court is required, instead, to instruct on a lesser-included offense only "if the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense."[30] Instructing on a lesser-included offense is proper only "if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense."[31]

An individual is guilty of third-degree escape "when he escapes from custody."[32]

The evidence presented at trial is clear that Lackey was both in custody and serving a sentence for a felony conviction, outside the parameters of third-degree escape. The only issue truly in doubt was whether or not Lackey used force, *i.e.,* whether Lackey committed first-degree or second-degree escape. Of course, "it is the jury's sole province and duty as the finder of fact to sift through the conflicting evidence and ... determine what evidence to believe and what evidence to disbelieve";[33] but here there was no conflicting evidence. The evidence was uncontroverted that Lackey was in custody and serving a felony sentence. Lackey even admitted himself that he did not think he was free to leave the parole officer's office. As we stated in *Commonwealth v. Collins,* "[t]here must be *some evidence* [to support] the requested instruction...."[34] Simply put, there simply was no evidence that would support "to any extent" an instruction on third-degree escape.

## III. CONCLUSION.

For the foregoing reasons, we affirm the judgment for Lackey's second-degree-es-

or public interest suffices to establish its commission."
KRS 505.020(2)(a)-(d). Neither party disputes that third-degree escape is a lesser-included offense of second-degree escape.

27. *Commonwealth v. Collins,* 821 S.W.2d 488, 491 (Ky. 1991). Any review of a trial court's duty to instruct on the whole law of the case is under an abuse-of-discretion standard. *Hunt v. Commonwealth,* 304 S.W.3d 15, 31 (Ky. 2009). A trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *See Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky. 2007).

28. *Brown v. Commonwealth,* 313 S.W.3d 577, 626 (Ky. 2010) (quoting *Thomas v. Commonwealth,* 170 S.W.3d 343, 348–49 (Ky. 2005)).

29. *Id.; see also Neal v. Commonwealth,* 95 S.W.3d 843, 850 (Ky. 2003).

30. *Id.* at 626–27 (citing *Fields v. Commonwealth,* 219 S.W.3d 742, 749 (Ky. 2007)) (emphasis added).

31. *Parker v. Commonwealth,* 952 S.W.2d 209, 211 (Ky. 1997).

32. KRS 520.040(1).

33. *Commonwealth v. Swift,* 237 S.W.3d 193, 196 (Ky. 2007).

34. 821 S.W.2d at 491.

cape conviction and associated sentence as a first-degree persistent felony offender.

All sitting. All concur.