# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0305-MR

MARSHA LYNN MILLER                                                    APPELLANT

V.                ON APPEAL FROM KENTON CIRCUIT COURT
                  HONORABLE KATHLEEN LAPE, JUDGE
                            NO. 21-CR-00258

COMMONWEALTH OF KENTUCKY                                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Marsha Lynn Miller ("Miller") was convicted of one count of murder and was sentenced to thirty years of imprisonment. After careful review, we affirm.

**<u>BACKGROUND</u>**

On March 29, 2021, Miller left her home after smoking Delta-8, a genetically modified derivative of marijuana. Miller had not eaten much that day and did not feel well, so she went out to get something to eat. Miller claimed she felt dizzy, so she turned into a parking lot. Video surveillance captured much of what happened next. Frank Harris ("Harris"), the victim, walked alone across the mostly empty parking lot toward the road and sidewalk until he was just offscreen. Miller's black sedan pulled into the lot, made a U-turn, and accelerated as she drove toward Harris. Once offscreen, the surveillance footage captured the sound of a collision and the screech of

tires coming to a halt. A witness told the jury that Harris's body flew ten feet into the air after Miller hit him. Harris died because of the collision.

That night, police interviewed Miller. She asserted she did not see Harris until she hit him. Before trial, Dr. Timothy Allen ("Dr. Allen") from the Kentucky Correctional Psychiatric Center (KCPC) evaluated Miller for competency to stand trial and testified at a competency hearing. Miller told Dr. Allen that she did not remember hitting Harris. Dr. Paul Ebben ("Dr. Ebben"), Miller's own mental health expert, interviewed Miller to establish that she was not criminally responsible for killing Harris. Miller told Dr. Ebben she hallucinated that a man in black told her to hit Harris and believed Harris himself was a hallucination. Dr. Ebben is the only witness Miller told that she hallucinated.

There was also trial testimony regarding Miller's medical history. Miller was diagnosed as deaf at sixteen months old. Her language development was slow. Miller was diagnosed with unspecified depression, unspecified psychosis (sometimes referred to as unspecified schizophrenia), bipolar disorder, cannabis use disorder, and borderline intellectual functioning. During her police interview, Miller stated she was nearsighted and needed glasses but could not afford them. Miller frequently smoked Delta-8.

Miller did not testify on her own behalf at trial.

The jury convicted Miller of murder, and she was sentenced to thirty years in accordance with the jury's recommendation. This appeal followed.

2

On appeal, Miller argues the trial court: (1) abused its discretion in allowing the Commonwealth to cross-examine Dr. Allen regarding her criminal responsibility; (2) palpably erred in allowing the Commonwealth to introduce medical records during Dr. Allen's testimony and failing to admonish the jury; (3) abused its discretion in prohibiting Dr. Ebben from testifying at trial; and (4) erred in failing to instruct the jury on reckless homicide.

**ANALYSIS**

## I. The trial court did not abuse its discretion in allowing the Commonwealth to cross-examine Dr. Allen on Miller's criminal responsibility.

First, Miller argues the trial court abused its discretion in allowing the Commonwealth to cross-examine Dr. Allen regarding Miller's criminal responsibility. Miller argues this was a breach of the requirement in *Conley v. Commonwealth*, 599 S.W.3d 756 (Ky. 2019), that the KCPC evaluator be "walled off" and precluded from testifying as the Commonwealth's rebuttal expert at trial. *Id.* at 770. In *Conley*, the trial court initially denied the defendant funds to retain a mental health expert and instead ordered a KCPC evaluation. *Id.* at 762. After the trial court received KCPC's report, it reversed its initial ruling and held that the defendant "was entitled to an independent mental health expert" and authorized funds to retain one. *Id.* The Commonwealth then "invoked its right to a mental health expert to contest [the defense expert's] findings and opinions." *Id.* The trial court "resolved the Commonwealth's request for an expert witness by effectively repurposing [the KCPC doctor] from her initial role as Conley's witness to the new role of being

3

the Commonwealth's witness." *Id.* Thus, the KCPC evaluator switched sides "and became a witness against Conley." *Id.*

This Court held "the trial court abused its discretion by refusing to grant Conley's initial motion for mental health expert witness funding and instead sending her to KCPC." *Id.* at 766. The Court reasoned that "[t]he expert witness appointed under KRS[1] 504.100 for a competency to stand trial evaluation at KCPC does not 'belong' to the defendant, but rather the expert acts as an agent of the trial court." *Id.* at 769; *see also Gabbard v. Commonwealth*, 887 S.W.2d 547, 550 (Ky. 1994). Conversely, "a mental health expert to which an indigent defendant may be entitled under [*Ake v. Oklahoma*, 470 U.S. 68 (1985)] . . . may accurately be described as 'belonging' to the defendant, unlike the evaluator acting as an agent of the trial court in a competency to stand trial proceeding." *Id.* If the trial court determines "the defendant is entitled to an expert under *Ake*, and the Commonwealth then seeks to retain KCPC to provide the prosecution with a rebuttal mental health expert," *Ake* compels "a second KCPC evaluator be assigned to act as the Commonwealth's expert witness and, to the extent practicable, the initial KCPC evaluator and evaluation should be "walled off" from the second evaluator who may then serve as the Commonwealth's expert at trial." *Id.* at 770. Following this procedure ensures that "an indigent defendant be equalized with a person of means defendant as required under *Ake.*" *Id.*

---

[1] Kentucky Revised Statutes.

4

At trial, Miller asserts that she questioned Dr. Allen in accordance with her notice. She asserts that on direct examination, his testimony remained within the confines of *Conley*. However, she argues his cross-examination testimony breached the *Conley* wall when the Commonwealth elicited Dr. Allen's opinion that Miller appreciated the criminality of her actions. Miller omits that her notice also acknowledged that Dr. Allen could testify on subjects raised by the Commonwealth on cross-examination.

Miller called Dr. Allen to explain Miller's mental illness to the jury in support of her insanity defense. During direct examination, Dr. Allen testified that Miller was competent to stand trial but suffered from unspecified psychosis with a history of paranoia, depression, and cannabis-use disorder. He believed her psychosis may have been caused or exacerbated by drug use. Defense counsel did not ask Dr. Allen if Miller was legally insane, but during the closing argument, counsel used Dr. Allen's testimony to convince the jury that Miller was legally insane.

However, on cross-examination, Dr. Allen testified that he only evaluated Miller for competency and did not evaluate Miller for insanity at the time of the incident. The burden rests on the defendant "to prove to the satisfaction of the jury that at the time the offense was committed, as a result of a mental disease or defect, [she] lacked substantial capacity either to appreciate the criminality of [her] conduct or to conform [her] conduct to the requirements of law." *Star v. Commonwealth*, 313 S.W.3d 30, 34 (Ky. 2010) (quoting *Edwards v. Commonwealth,* 554 S.W.2d 380, 383 (Ky. 1977); KRS 504.020)).

5

There was no breach of the *Conley* walling-off requirement here. *Conley* prohibits the *Commonwealth* from using the KCPC evaluator or the report as rebuttal evidence against the defendant and requires that both the defendant and the Commonwealth obtain separate mental health experts to testify at trial. *Id.* at 770. It is undisputed that Miller and the Commonwealth each had their own expert witnesses available to testify at trial. Miller called the initial KCPC evaluator to testify at trial, not the Commonwealth. Prior to trial, Miller provided notice that she would call Dr. Allen to testify regarding his diagnostic impressions of her and to testify that she was diagnosed with unspecified psychosis. The notice of Dr. Allen's testimony excluded any opinion regarding her culpability. After this notice, the Commonwealth informed the trial court that it would not call its retained expert to rebut Dr. Ebben's opinion.

Miller made no argument here or below that this was an improper topic for cross-examination under the rules of evidence because cross-examination on Miller's criminal responsibility was clearly permissible. KRE[2] 611(b) provides: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the trial court may limit cross-examination with respect to matters not testified to on direct examination." The scope of "cross-examination is 'wide open[,]'" but it "is subject to the reasonable discretion of the court." *Conley*, 599 S.W.3d at 780. In raising an insanity defense, Miller opened the door to the Commonwealth's

---

[2] Kentucky Rules of Evidence.

6

cross-examination on her criminal responsibility. Though defense counsel did not directly ask Dr. Allen if Miller was not criminally responsible for her actions when she struck the victim with her car, defense counsel used Dr. Allen's testimony regarding Miller's psychiatric diagnoses to support her insanity defense. Thus, the trial court did not abuse its discretion in allowing the Commonwealth to cross-examine Dr. Allen on Miller's criminal responsibility. *Conley* is inapplicable.

## II. The trial court did not palpably err in allowing the Commonwealth to introduce the medical and school records during Dr. Allen's cross-examination or in failing to admonish the jury.

Second, Miller argues she was prejudiced by the trial court's failure to provide Miller the safeguards of KRE 703 when it failed to make the required findings and admonish the jury under KRE 703(b) regarding medical records that came in through Dr. Allen's testimony. As explained below, this argument was not properly preserved, so we review for palpable error.

During Dr. Allen's cross-examination, the Commonwealth moved to admit Miller's school and medical records used in compiling his report. The Commonwealth also moved to admit medical records only reviewed by Dr. Ebben, the defense expert, in compiling his report. Dr. Allen saw those records for the first time during cross-examination because Miller did not provide them for her competency evaluation. Miller objected to the entry of medical records. Defense counsel's objection to the records reviewed by Dr. Allen was not specific and was based on her belief that there was an evidentiary rule about

7

the extent to which witnesses can testify about specific records reviewed. She did not request specific findings or an admonition at that time.

Later, defense counsel objected when the Commonwealth introduced hospital records that Dr. Allen did not have when preparing his report, but that Dr. Ebben used only in compiling his report. Miller argued that those records were outside the scope of what Dr. Allen could testify to because they were not used in compiling his report. Dr. Allen did not review them prior to trial because Miller did not provide them to him. Again, Miller failed to make a contemporaneous objection on KRE 703(b) grounds.

Although the records were admitted through Dr. Allen's testimony on the third day of trial, Miller waited until the fifth day of trial to make an oral objection on KRE 703 grounds.[3] The trial court took Miller's objection under advisement. Based on our review of the record, the trial court did not rule on this motion.

The trial court's failure to rule on Miller's late objection is immaterial because objections must be contemporaneous and specific to preserve a claim of error. RCr 9.22, the contemporaneous objection rule, requires counsel to "at the time the ruling or order of the court is made or sought, makes known to the court the action which that party desires the court to take or any objection to the action of the court, and on request of the court, the grounds therefor." Preservation of an issue not raised in a detailed motion in limine requires

---

[3] The trial court heard no testimony on the fourth day of trial because Miller's final witness, Dr. Ebben was unavailable that day.

defense counsel to make a specific, contemporaneous objection because "the trial judge cannot be expected to . . . infallibly recognize the point at which . . . evidentiary boundaries have been crossed and respond *sua sponte* with an unsolicited ruling." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 332 (Ky. 2014).

Though Miller made vague objections on hearsay grounds during Dr. Allen's testimony, Miller waited two trial days to make a specific objection under KRE 703(b) and request findings and an admonition. Given that defense counsel made earlier objections, she had the opportunity to object under KRE 703(b) and request an admonition sooner but failed to do so. *See Clay v. Commonwealth*, 291 S.W.3d 210, 220 (Ky. 2008). As such, Miller's argument is unpreserved, so we review only for palpable error under RCr 10.26.

In reviewing for palpable error, this court will only reverse the judgment if "the error is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006)). "It should be so egregious that it jumps off the page . . . and cries out for relief." *Id.* (quoting *Chavies v. Commonwealth*, 374 S.W.3d 313, 323 (Ky. 2012)).

KRE 703(b) allows otherwise inadmissible evidence to come in "'[i]f determined to be trustworthy, necessary to illuminate testimony, and unprivileged,' to explain the basis of an expert's opinion." *Hoff v.*

*Commonwealth*, 394 S.W.3d 368, 374 (Ky. 2011) (quoting KRE 703(b)). KRE

703 provides:

> (a) The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
>
> (b) If determined to be trustworthy, necessary to illuminate testimony, and unprivileged, facts or data relied upon by an expert pursuant to subdivision (a) may at the discretion of the court be disclosed to the jury even though such facts or data are not admissible in evidence. Upon request the court shall admonish the jury to use such facts or data only for the purpose of evaluating the validity and probative value of the expert's opinion or inference.
>
> (c) Nothing in this rule is intended to limit the right of an opposing party to cross-examine an expert witness or to test the basis of an expert's opinion or inference.

In *Exantus v. Commonwealth*, 612 S.W.3d 871 (Ky. 2020), this Court

explained the application of KRE 703:

> Subsection (a), in relevant part, embodies the well-established rule that experts are permitted to base their opinions on facts and data that are not otherwise admissible in evidence, if they are of a type reasonably relied upon by other experts in their field. Stated differently, the facts and data that an expert relies upon in forming his or her opinion do not need to be admissible in order for the expert's opinion itself to be admissible. Subsection (b) provides that if an expert relied on otherwise inadmissible evidence in forming their opinion, that evidence can come in as a means to challenge the validity and probative value of that expert's opinion. However, that evidence may only be admitted if the trial court determines that the evidence was "trustworthy, necessary to illuminate testimony,

10

and unprivileged." Subsection (c) is self-explanatory: nothing in KRE 703(a) or (b) is meant to limit the ability of an opposing party to cross-examine or challenge the basis of an expert's opinion.

*Id.* at 899 (footnote omitted).

The Commonwealth was permitted to cross-examine Dr. Allen on the "full limits of the dispute" under KRE 703(c). *Commonwealth v. Armstrong*, 556 S.W.3d 595, 600 (Ky. 2018); KRE 611. As in *Exantus*, cross-examination on Miller's insanity "itself was permissible" because she raised an insanity defense. *Exantus*, 612 S.W.3d at 901. The trial court had the discretion to permit disclosure to the jury of facts or data made known to an expert "at or before the hearing." KRE 703(a) and (b). Because Miller failed to make a timely objection and request for an admonition under KRE 703(b) the trial court did not make the requisite findings or exercise its discretion to admonish the jury.

Though failure to make the requisite findings of whether the medical records were "trustworthy, necessary to illuminate testimony, and not privileged" under KRE 703(b) is technically erroneous, the error was not palpable. We cannot say that the trial court's failure to make said findings was so egregious that it affected the fairness of her proceedings. *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). Thus, the trial court did not palpably err in failing to make the requisite findings prior to permitting disclosure of the medical records to the jury.

The only remaining question is whether the trial court palpably erred in failing to admonish the jury when the request was not made

11

contemporaneously. Although KRE 703(b) states that a trial court shall admonish the jury when one is requested, Miller's request was untimely.

Miller argues she was prejudiced by the admission and the trial court's failure to admonish the jury because the Commonwealth engaged Dr. Allen in a lengthy review of the records, and its closing argument made multiple references to the records to prove Miller's intent to kill. Miller further argues that the Commonwealth's reliance on these records substantially influenced the jury to find her guilty of intentional murder instead of a lesser *mens rea* or was not guilty by reason of insanity.

Based on our review, the trial court's failure to admonish the jury was not so great as to affect the outcome of Miller's trial. The evidence of her guilt was overwhelming. Miller admitted to killing Harris. The only issue in dispute was her mental state at the time of the incident. It is undisputed that Miller slowly pulled into the parking lot and accelerated as she aimed her car toward Harris. The jury could hear her revving the car engine as she sped toward him, hear her car hitting his body, and his body landing on the ground after flying up in the air.

During her interview with the police after the incident, Miller appeared to be lucid. Miller's only explanation for her actions was that she felt ill from hunger and did not see Harris when she hit him. Miller did not mention hallucinations in the interview. She did not express regret for hitting Harris.

Dr. Allen's testimony did not support an insanity defense. He merely evaluated Miller for competency, not insanity. He testified that during her

12

KCPC evaluation, Miller was not on any antipsychotic medication and showed no signs of hallucinations. Miller only ever mentioned hallucinations when Dr. Ebben interviewed her about the murder. The medical records introduced by the Commonwealth during Dr. Allen's cross-examination reinforced the Commonwealth's argument that Miller lacked any substantial history of serious hallucinations.

The trial court had the discretion to disclose Miller's medical records to the jury even though it failed to make the requisite findings under KRE 703(b). The evidence of her guilt was overwhelming, so the introduction of Miller's medical records through Dr. Allen's cross-examination and lack of admonition was not so significant as to impact the outcome of her trial. Thus, the trial court did not palpably err in allowing the Commonwealth to introduce the medical records or failing to admonish the jury.

**III. The trial court did not abuse its discretion in excluding Dr. Ebben's testimony after he changed his diagnosis during his direct examination.**

Third, Miller argues the trial court abused its discretion in excluding Dr. Ebben from testifying after he changed his diagnosis during direct examination. "[A] trial court's ruling on the admission of expert testimony should not be disturbed unless there is an abuse of discretion." *Terry v. Commonwealth,* 332 S.W.3d 56, 60 (Ky. 2010) (citing *Farmland Mut. Ins. Co. v. Johnson,* 36 S.W.3d 368, 387 (Ky. 2000)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v.*

13

*Thompson,* 11 S.W.3d 575, 581 (Ky. 2000) (quoting *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999)).

Miller retained Dr. Ebben as an expert to evaluate her criminal responsibility. Dr. Ebben's report stated that he diagnosed her with schizoaffective disorder. During his direct testimony, Dr. Ebben told the jury his report stated Miller's diagnosis as schizoaffective disorder, but he meant to write that his diagnosis was unspecified schizophrenia. The trial court then held an *in camera* hearing for Dr. Ebben to explain the discrepancy.

Dr. Ebben told the trial court that his diagnosis of unspecified schizophrenia meant Miller suffered from either schizoaffective disorder or bipolar disorder with psychosis. Dr. Ebben acknowledged schizophrenia and schizoaffective disorder are two separate disorders. He believed the diagnosis was likely schizoaffective disorder, but he was unsure. Dr. Ebben admitted that if he were allowed to continue testifying, he would say Miller had unspecified schizophrenia, which is not the same diagnosis as in his report. Miller characterizes this mistake as a "typo."

Miller argues the Commonwealth could have impeached Dr. Ebben, and the jury should have been allowed to assess the weight of his testimony. Additionally, she argues the Commonwealth declined to call its rebuttal expert to testify at trial but instead cross-examined Dr. Allen to rebut Dr. Ebben. Miller asserts Dr. Ebben's opinion would have rebutted Dr. Allen's cross-examination, but she omits that she called Dr. Allen to testify. The Commonwealth argues Dr. Ebben's misstated diagnosis went beyond a mere

14

typo, and it did not receive proper notice of his testimony. The Commonwealth argues it would be impossible for the jury to weigh Dr. Ebben's testimony because the Commonwealth could not effectively cross-examine Dr. Ebben due to the surprise change in diagnosis.

RCr 7.24(3)(a) requires defense counsel to "furnish to the attorney for the Commonwealth a written summary of any expert testimony that the defense intends to introduce at trial. This summary must identify the witness and describe that witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." "[W]hen a defendant intends to introduce an expert (1) who will testify to a mental disease or defect or any other mental condition of the defendant and (2) that testimony bears upon the issue of the defendant's guilt or punishment," RCr 7.24(3)(a) "is triggered and the expert must be disclosed." *Terry*, 332 S.W.3d at 59. Advance disclosure allows the Commonwealth "adequate pretrial preparation, to prevent surprise at trial, and to avoid the necessity of delays during trial." *Id.* at 59-60 (quoting *United States v. Davis,* 93 F.3d 1286, 1294 (6th Cir. 1996)). The rule only applies when a defendant seeks "to prove a lack of guilt due to mental illness at the time of the crime." *Id.* at 60 (quoting *Powell v. Graham,* 185 S.W.3d 624, 630 (Ky. 2006)).

In *Jones v. Commonwealth*, 237 S.W.3d 153 (Ky. 2007), this Court held it was an abuse of discretion for the trial court to limit the appellant's expert witness testimony when "Jones had not informed the Commonwealth during discovery that he intended for Dr. Melekovets to criticize the Commonwealth's expert's methodologies." *Id.* at 155. This Court reasoned that "it surely could

15

not have come as a surprise to the Commonwealth that Dr. Melekovets would disagree with the conclusion and/or analytical process used by the Commonwealth's DNA expert in light of the conclusions contained in Dr. Melekovets's report." *Id.* at 158-59.

The *Jones* opinion distinguishes from *Barnett v. Commonwealth,* 763 S.W.2d 119 (Ky. 1988), in which this Court held "that it was error for the trial court to permit the serologist to testify at trial about the hand washing because the serologist's report did not contain any opinions regarding hand washing." *Id.* at 157-58.

Here, there is no dispute that Miller filed a disclosure of Dr. Ebben's report under RCr 7.24. The disclosure stated "Dr. Ebben will testify that Ms. Miller is likely diagnosed with schizoaffective disorder. He will further testify that there is a possibility that Ms. Miller was experiencing severe mental illness, potentially impacting her ability to be held criminally responsible at the time of the incident; however, there are many uncertainties and unknowns." The issue is that, at trial, Dr. Ebben testified that his diagnosis was unspecified schizophrenia instead of schizoaffective disorder.

During Dr. Ebben's *in camera* testimony, he stated schizoaffective disorder and unspecified schizophrenia are different diagnoses in the DSM-5.[4] He also testified that unspecified schizophrenia is an umbrella diagnosis when it is unclear whether the patient suffers from schizoaffective disorder or bipolar

---

[4] Diagnostic and Statistical Manual of Mental Disorders, 5th Edition.

16

disorder with psychosis. Dr. Ebben's report states that Miller most likely suffered from schizoaffective disorder instead of bipolar disorder with psychosis. However, given that the specified schizophrenia is a different diagnosis, the Commonwealth, which is not a mental health expert, was unaware of this change in diagnosis prior to the trial. It was reasonable for the trial court to determine the Commonwealth was unable to adequately prepare to cross-examine Dr. Ebben. Thus, the trial court's ruling was rooted in fairness and supported by sound legal principles, so we cannot say the trial court abused its discretion in excluding Dr. Ebben's testimony.[5]

Miller also argues that because Dr. Allen testified Miller never talked to him about experiencing hallucinations, Dr. Ebben should have been permitted to testify that Miller told him she hallucinated to support her insanity defense. This is impermissible. Evidence supporting an insanity defense "must come from some admissible source." *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky. 2010). In *Padgett*, the defendant sought "to prove the presence of her extreme emotional disturbance with expert testimony based primarily on her out-of-court statements." *Id.* "Where the defendant does not testify and there is no other factual basis to support a defense of extreme emotional disturbance, that defense cannot be bootstrapped into the evidence by an expert opinion

---

[5] We note that Miller's counsel was unaware that there would be a discrepancy between Dr. Ebben's report and his testimony until the issue arose during Dr. Ebben's testimony.

17

premised primarily on out-of-court information furnished by the defendant." *Id.* at 341-42 (quoting *Talbott v. Commonwealth,* 968 S.W.2d 76, 85 (Ky. 1998)).

Miller did not testify on her behalf at trial. Though Dr. Ebben reviewed prior medical records in assessing Miller's criminal responsibility, the only evidence negating Miller's culpability when the incident occurred was her out-of-court statements that she hallucinated during the incident to Dr. Ebben. There were no medical records regarding Miller's mental state near the time of the incident. There was no other evidence that Miller hallucinated or suffered from delusions severe enough to support her insanity defense. Miller did not mention anything indicating she experienced hallucinations or delusions to the police or Dr. Allen. Because Miller did not testify and there was no other evidence regarding her criminal responsibility, she attempted to bootstrap her insanity defense into evidence through Dr. Ebben's testimony with uncross-examined, out-of-court information furnished by Miller. Thus, the trial court did not abuse its discretion in prohibiting Dr. Ebben from testifying further at trial following the disclosure of the discrepancy.

## IV. The trial court did not abuse its discretion in declining to instruct the jury on reckless homicide.

Fourth, Miller argues the trial court abused its discretion in failing to instruct the jury on reckless homicide. "[I]n deciding whether to give a requested instruction the trial court must decide 'whether the evidence would permit a reasonable juror to make the finding the instruction authorizes.' . . . [T]he trial judge's superior view of evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard."

18

*Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015) (quoting *Springfield v. Commonwealth*, 410 S.W.3d 589, 599 (Ky. 2013), <u>overruled on other grounds, Univ. Med. Ctr., Inc. v. Shaub</u>, 628 S.W.3d 112 (Ky. 2021)).

Although "a trial court must instruct the jury on the whole law of the case," a trial court is not required to "place before the jury speculative theories . . . merely because the testimony includes some basis for the speculation." *Lackey v. Commonwealth*, 468 S.W.3d 348, 355 (Ky. 2015) (quotation marks and footnote omitted). Instructing on a lesser-included offense is only required when "the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense." *Id.* (internal quotation marks and footnote omitted). Stated differently, "[i]nstructing on a lesser-included offense is proper only if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense." *Id.* (internal quotation marks and footnote omitted).

Under a "'straight' reckless homicide theory, . . . the defendant acts without the specific intent to kill and in doing so, fails to perceive a substantial and unjustifiable risk that his actions could cause the victim's death." *Commonwealth v. Hasch*, 421 S.W.3d 349, 355 (Ky. 2013) (citing KRS 507.050(1) and KRS 501.020(4)). "[F]ailure to perceive that risk must be 'a gross deviation from the standard of care that a reasonable person would observe in the situation,'" and "the victim's death supplies the element of recklessness necessary to sustain a reckless homicide conviction." *Id.* at 356 (quoting KRS 501.020 (4)).

In *Hasch*, the appellee "killed her husband by shooting him with a gun." *Id.* at 357. She "was skilled in the use of firearms" and understood the ramifications of pulling the trigger at a short distance from her husband's head. *Id.* This Court held:

> No rational juror could believe that Appellee *failed to perceive the risk* of death inherent in her conduct of firing a pistol, with or without her eyes closed, in the direction of another person at such close range. The essential element of straight reckless homicide—her failure to perceive the risk that her actions could result in another's death—is undoubtedly absent here[.]

*Id.*

Miller argues that her statement to a detective that she did not intend to kill Harris was sufficient to instruct the jury on reckless homicide. However, this argument is speculative. Based on the evidence, no rational juror could believe that Miller failed to perceive the risk in her conduct of suddenly accelerating her car as Harris walked in front of her car.

The trial court instructed the jury on murder and the lesser included offenses of first-degree manslaughter and second-degree manslaughter, which both require a mental element greater than reckless. The evidence did not support an instruction on reckless homicide. The jury found Miller guilty of murder, so it rejected a lesser mental state. Thus, the trial court did not abuse its discretion in failing to instruct the jury on the charge of reckless homicide.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Kenton Circuit Court.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Keller, Nickell, JJ., concur. Thompson, J., concurs in result only by separate opinion.

THOMPSON, J., CONCURRING IN RESULT ONLY: I agree with the majority opinion that it is appropriate to affirm, because the evidence of guilt was overwhelming, but I vehemently disagree with the majority's analysis that it was appropriate for the trial court to allow the admission of medical records and school records without previous disclosure. Whether or not Marsha Lynn Miller's objection to this error was sufficient to preserve it, this was a terrible and intolerable error! I write separately to emphasize the seriousness of such an error; to emphasize how highly inappropriate it was for the Commonwealth to introduce such records in such a manner; and to inform trial courts that they must be on their guard against allowing records to be admitted into evidence without a proper foundation.

The basis for the admission of records through cross-examination of Miller's expert, Dr. Allen, was not satisfied. Kentucky Rules of Evidence (KRE) 703(a) specifies that the facts or data upon which an expert bases an opinion, "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions . . . need not be admissible in evidence." KRE 703(b) provides a very narrow basis upon which to admit such facts or data: "If determined to be trustworthy, necessary to illuminate testimony, and unprivileged, facts or

21

data relied upon by an expert pursuant to subdivision (a) may at the discretion of the court be disclosed to the jury even though such facts or data are not admissible in evidence." Additionally, if such facts and data are admitted, KRE 703(b) specifies further: "Upon request the court shall admonish the jury to use such facts or data only for the purpose of evaluating the validity and probative value of the expert's opinion or inference."

As we know from the majority opinion, medical records, school records, and hospital records only reviewed by Dr. Ebben, the defense expert who was ultimately not allowed to testify, and not reviewed by Dr. Allen were admitted. Therefore, no appropriate foundation for their admission was provided.

While medical records may be admissible under the business records exception to hearsay if also authenticated, and pursuant to KRE 803(4) statements made for the purposes of medical treatment or diagnosis are admissible, that does not mean that every statement within those medical records is admissible. Many other hearsay statements also contained therein will not be. Parties need an opportunity to comb through medical records to try to parse admissible evidence from inadmissible evidence and make all needed objections before such records should ever be admitted into evidence in a criminal case.

Additionally, even if an expert has relied upon medical records, it does not mean that everything within those records is admissible, for certainly there may be facts and data within those records which are appropriately used by experts in the field, and other facts and data which would not be used by

22

experts within the field. Among the subset of facts and data actually relied upon, not all of such records will qualify as being "trustworthy, necessary to illuminate testimony, and unprivileged[.]" The trial court as gatekeeper must be cognizant of the limits of admitting evidence under this rule.

As noted in *Exantus v. Commonwealth*, 612 S.W.3d 871, 900–01 (Ky. 2020), strict adherence to the requirements of KRE 703(b), "that the evidence be determined by the trial court to be 'trustworthy, necessary to illuminate testimony, and unprivileged'" is required as "it is . . . the only safeguard in KRE 703 against the erroneous admission of evidence[.]" A trial court should address the factual determinations required by KRE 703(b) before admitting such records into evidence. *Hoff v. Commonwealth*, 394 S.W.3d 368, 374 (Ky. 2011); *Exantus*, 612 S.W.3d at 901; *Rabovsky v. Commonwealth*, 973 S.W.2d 6, 11 (Ky. 1998). Depending on the prejudice resulting from the wrongful admission of inadmissible statements, this can constitute a palpable, reversible error. *Hoff*, 394 S.W.3d at 375.

Finally, it is mandatory that an appropriate admonition be given upon request, and it should not matter at what time the request takes place as long as it occurs before the jury retires. The trial court had a duty to so instruct the jury when Miller requested an admonition, even if it was made with a tardy objection.

Given the overwhelming evidence against Miller, she was not ultimately prejudiced by the trial court's failure to exclude this evidence, which was further compounded by the trial court's failure to give an appropriate

23

instruction. However, ultimately, the result would not have been any different had this evidence been excluded and/or the jury been admonished. Therefore, I agree that this error was not palpable.

Accordingly, I concur in result only.

COUNSEL FOR APPELLANT:

Jennifer Elizabeth Hubbard
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General